UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **O.M.G.**, *et al.*, <br><br>Petitioners, <br><br>v. <br><br>**CHAD WOLF**, *et al.*, <br><br>Respondents. | Civil Action No. 20-786 (JEB) |

## MEMORANDUM OPINION

Petitioners are minors and adults detained in three family residential centers (FRCs) — communal immigration-detention facilities in Texas and Pennsylvania that exclusively house migrant families seeking asylum in the United States. As the spread of the pandemic throughout this year has made clear, individuals residing in such congregate settings — *e.g.*, nursing homes or prisons — face a greater risk than the general population of contracting COVID-19, particularly when proper health protocols are not in place. Concerned about the conditions of their confinement, Petitioners brought this mandamus Petition under the Constitution and the Administrative Procedure Act, asking the Court to mandate improved safety protocols or, in the alternative, to release them. At earlier stages of the litigation, in addressing motions for preliminary relief, the Court ordered the Government to implement better virus-prevention procedures in the FRCs but denied the request for release. Now pending is the Government's request for dismissal of all claims, which the Court will grant in part and deny in part.

1

**I.    Background**

The Court has previously set forth the underlying facts of the case and assumes the reader's familiarity with that prior Opinion. O.M.G. v. Wolf, No. 20-786, 2020 WL 4201635 (D.D.C. July 22, 2020).  Whereas that decision addressed some post-Petition updates to the conditions at the facilities, in this Opinion, the Court will focus its attention on Petitioners' original pleading and treat all facts within it as true.  See Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000).

In brief, Petitioners are over 200 noncitizen parents and minor children who are, at least as of March of this year, detained in three FRCs.  See ECF No. 1 (Pet.) at 2; O.M.G., 2020 WL 4201635, at *1.  The three centers are located in Leesport, Pennsylvania, and in Dilley and Karnes City, Texas, id., and are managed by U.S. Immigrations and Customs Enforcement, the component of the U.S. Department of Homeland Security that oversees the civil detention of immigrants.  See U.S. Immigr. and Customs Enf't, Detention Management (Nov. 13, 2020), https://bit.ly/37PiH2t.  On March 21, 2020 — shortly after the World Health Organization declared COVID-19 a pandemic and as American cities first began to shut down — Petitioners filed this action against Chad Wolf, acting Secretary of DHS, and William Barr, Attorney General of the United States.  They challenge their conditions of confinement and contend that their continued detention, without ICE's implementation of and compliance with better health policies, violates their due-process rights and is arbitrary and capricious.  See Pet. at 38–39.  In addition, Petitioners ask this Court to find the Government in violation of a longstanding consent decree known as the Flores Settlement Agreement (FSA), which provides certain rights to minors detained at FRCs.  Id. at 39–40.

Simultaneous to filing for mandamus, Petitioners sought a Temporary Restraining Order, asking the Court to compel ICE to implement COVID-19 safety protocols at the FRCs or, if such changes were not possible, to release them. See ECF No. 4-1 (TRO Mot.) at 1, 28. That same month, the Court granted in part and denied in part the Motion, requiring ICE to install procedures consistent with CDC guidance for congregate detention facilities but declining to order Petitioners' release. See Min. Order (Mar. 30, 2020). In July 2020, Petitioners then sought a preliminary injunction focusing solely on their release, see ECF No. 78 (PI Mot.), which the Court denied. O.M.G., 2020 WL 4201635, at *1. Since then, Petitioners have added three families to the lawsuit, see Min. Order (09/16/2020), and Respondents have continued to submit updates on the facilities, including notices of positive cases. E.g., ECF Nos. 142–51.

During the Court's ongoing monitoring of the TRO, in May 2020, Respondents moved for dismissal of all claims. See ECF No. 58-1 (MTD). After resolving Petitioners' emergent motions, the Court asked the Government whether it would like to modify or withdraw its Motion to Dismiss, in light of the PI Opinion and subsequent developments on the ground at the FRCs. See Min. Order (Sept. 16, 2020). Respondents declined, thereby choosing to proceed with their Motion as filed. See ECF No. 136 at 1. Petitioners, for their part, did not ask this Court for leave to amend their Petition. Id. Although amendment by both sides to better reflect current circumstances seems the wiser course, given that the facts and arguments at issue are somewhat outdated, the Court nonetheless addresses Respondents' Motion as filed.

## II.    Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of an action where a complaint fails "to state a claim upon which relief can be granted." In evaluating Respondents' Motion to Dismiss, the Court must "treat the complaint's factual allegations as true . . . and must

3

grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" Sparrow, 216 F.3d at 1113 (quoting Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979)); see also Jerome Stevens Pharms., Inc. v. FDA, 402 F.3d 1249, 1250 (D.C. Cir. 2005). The pleading rules are "not meant to impose a great burden upon a plaintiff." Dura Pharms., Inc. v. Broudo, 544 U.S. 336, 347 (2005).

Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). The Court need not accept as true, then, "a legal conclusion couched as a factual allegation," nor an inference unsupported by the facts set forth in the complaint. Trudeau v. FTC, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)). For a plaintiff's complaint to survive a 12(b)(6) motion even if "recovery is very remote and unlikely," Twombly, 550 U.S. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)), the facts alleged "must be enough to raise a right to relief above the speculative level." Id. at 555. In resolving Respondents' Motion, the Court may consider only the factual allegations set forth in the Petition, any documents attached to or incorporated therein, and matters subject to judicial notice. EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997).

The standard to survive a motion to dismiss under Rule 12(b)(1) is less forgiving. Under this part of the Rule, a plaintiff must show that the Court has subject-matter jurisdiction to hear his claim. Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992); U.S. Ecology, Inc. v. U.S. Dep't of Interior, 231 F.3d 20, 24 (D.C. Cir. 2000). A court also has "an affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority." Grand Lodge of Fraternal

4

Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 13 (D.D.C. 2001).  For this reason, a "'[p]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim." Id. at 13–14 (alterations in original) (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 (2d ed. 1987)).  Additionally, unlike with a motion to dismiss under Rule 12(b)(6), the Court "may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction." Jerome Stevens, 402 F.3d at 1253; see also Herbert v. Nat'l Acad. of Scis., 974 F.2d 192, 197 (D.C. Cir. 1992).

**III.    Analysis**

Respondents ask this Court to dismiss all counts, contending that Petitioners fail to state a due-process or APA claim, and that the Court lacks jurisdiction over the latter, as well as over the FSA, mandamus, and declaratory-judgment counts.  As the Court has already addressed aspects of Petitioners' contentions at various points of the litigation, it will rely on that prior heavy lifting to now more briefly assess their claims' viability.  Finding Respondents' arguments persuasive on certain counts, the Court will grant their Motion as to all but due process and FSA.

    A.  Due Process

Seeking more protective COVID-19 protocols or their release, Petitioners first maintain that the conditions of their confinement violate the Due Process Clause of the Fifth Amendment. See Pet. at 38, 42.  Addressing Respondents' request for dismissal requires little work, as the Court has already granted some relief based on its determination of a likelihood of success on the merits of this count.  Merely clearing the pleading bar for Rule 12(b)(6) purposes is an even easier task.  In granting the TRO, the Court relied on the Due Process Clause in requiring the Government to "provide to FRC detainees CDC-compliant protocols and protections for

5

congregate settings in civil-detention facilities."  Min. Order (3/30/2020).  Such relief would not have been possible had Petitioners failed to even state a claim.

Although Respondents acknowledge that relief, in requesting dismissal they maintain that Petitioners' "true claim is that any confinement of families at the FRCs during the COVID-19 pandemic violates the Constitution."  MTD at 10.  While Petitioners did bring a preliminary-injunction motion focused on release and no doubt agree with this legal proposition, see PI Mot. at 1, the Court's focus here should not be on that motion's remedy requests, but rather on whether Petitioners have sufficiently alleged facts that constitute a due-process violation.  As noted above, they plainly have.  In any event, their original Petition also requests less drastic remedies than release.  See Pet. at 41–42 (requesting, as alternatives to release, declaratory relief and orders to implement CDC protocols).

Even were the Court to take judicial notice of the parties' submissions regarding updated conditions at the FRCs between the filing of the Petition in March and the Motion to Dismiss in May, as Respondents ask this Court to do, it would conclude that Petitioners have stated a claim.  As the Court explained in its preliminary-injunction Opinion in July — when it considered conditions at the FRCs months after it had ordered the Government to implement better virus-prevention procedures — "[W]hether Petitioners' conditions of confinement likely violate the Due Process Clause [at this time] is a close question."  O.M.G., 2020 WL 4201635, at *10.  While the Court ultimately determined that wholesale release was not warranted on the record existing at that stage of the litigation, its analysis necessarily relied on a determination that Petitioners had stated a claim.  Id. at *10–11.  Dismissal is thus inappropriate.

B.  Administrative Procedure Act

Petitioners next allege that the Court should find Respondents' alleged "failure to act in a timely manner to protect [detained migrant families]" and their "continued refusal to establish and implement policies and procedures designed to prevent the transmission of COVID-19" arbitrary and capricious.  See Pet. at 38–39; see also 5 U.S.C. § 706(2)(A).  Even assuming that the exhaustion of administrative remedies is not required for the Court to review Petitioners' claim, see ECF No. 60 (Opp.) at 23, it concludes that dismissal is warranted because Petitioners have not identified any final agency action.  See MTD at 20–21.

The APA provides for judicial review of all "final agency action[s] for which there is no other adequate remedy in a court," 5 U.S.C. § 704, except when "statutes preclude judicial review," or the "agency action is committed to agency discretion by law."  Id. § 701(a).  The "final agency action" requirement is jurisdictional, DRG Funding Corp. v. Sec'y of Housing & Urban Dev., 76 F.3d 1212, 1214 (D.C. Cir. 1996) ("If the agency action is not final, the court therefore cannot reach the merits of the dispute."), and comprises two inquiries.  Nat'l Ass'n of Home Builders v. Norton, 415 F.3d 8, 13 (D.C. Cir. 2005).  First, there must be an "agency action," which is defined in the APA to "include[] the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act."  5 U.S.C. § 551(13).  Second, that action must be "final," meaning it must both "mark the consummation of the agency's decisionmaking process" rather than "be of a merely tentative or interlocutory nature," and it must "be one by which rights or obligations have been determined or from which legal consequences will flow."  U.S. Army Corps of Engineers v. Hawkes Co., 136 S. Ct. 1807, 1813 (2016) (quoting Bennett v. Spear, 520 U.S. 154, 177–78 (1997)).

While section 706(1) of the APA is the more typical source of failure-to-act claims, as it provides for review of actions unlawfully withheld, Norton v. S. Utah. Wilderness Alliance, 542 U.S. 55, 64 (2004), here Petitioners rely solely on section 706(2), which permits a party to seek relief for arbitrary and capricious actions. Even assuming that a failure to act can be arbitrary and capricious, All. to Save Mattaponi v. U.S. Army Corps of Engineers, 515 F. Supp. 2d 1, 9–10 (D.D.C. 2007) (holding it can), the inaction alleged in this case lacks the necessary hallmarks of finality. Courts take a pragmatic approach to the finality inquiry, Hawkes Co., 136 S. Ct. at 1815, and have found claims subject to judicial review under section 706(2) when, for example, one agency's decision not to veto a permit granted by another agency effectively constituted final approval. All. to Save Mattaponi, 515 F. Supp. 2d at 10 (finding inaction "final, notwithstanding the fact that the agency 'did' nothing"). Here, however, Petitioners plead no facts to indicate that Respondents' "failure to act" in the initial weeks of the pandemic to create safer conditions — while unfortunate and ill-advised — represents the "consummation of the agency's decisionmaking process," rather than simply the government's provisional position, or somehow determines their "legal rights or obligations." Hawkes Co., 136 S. Ct. at 1813 (quoting Bennett, 520 U.S. at 177–78). Nor does merely claiming that agency inaction is "final," as Petitioners do, make it so. See Pet. at 39.

Separately, Respondents interpret the Petition to plead a distinct request for judicial review of the Government's specific parole determinations for detained families. See MTD at 22. To the extent Petitioners plead such a claim, the Court agrees that it lacks jurisdiction because discrete parole determinations are discretionary. See Damus v. Nielsen, 313 F. Supp. 3d 317, 327 (D.D.C. 2018) (finding same); see also 5 U.S.C. § 701(a)(2) (prohibiting judicial review under APA of "agency action[s] . . . committed to agency discretion by law"); 8 U.S.C.

8

§ 1252(a)(2)(B)(ii) ("[N]o court shall have jurisdiction to review . . . any other decision or action . . . the authority for which is specified . . . to be in the discretion of the Attorney General or the Secretary of Homeland Security."). Indeed, in their Petition, Petitioners acknowledge the discretionary nature of parole determinations. E.g., Pet. at 34 ("Section 212(d)(5)(A) of the Immigration and Nationality Act permits the Attorney General, at his or her discretion to 'parole' any noncitizen into the United States . . . ."); id. at 34–35 (describing regulations as vesting Attorney General and DHS Secretary with discretion to parole or release detainees).

Petitioners' APA claim thus proceeds no further.

C.  FSA

A subset of Petitioners — specifically, all minors — asks this Court to enforce the FSA, a longstanding consent decree that guarantees certain rights to juveniles detained in immigration facilities. See Pet. at 39–40, 42; see also Opp. at 25–26. Under that agreement, minors must be held "in facilities that are safe and sanitary," ECF No. 1-18 (FSA), ¶ 12.A, and the Government must "release a minor from its custody without unnecessary delay" once it "determines that the detention of the minor is not required either to secure his or her timely appearance [in immigration proceedings], or to ensure the minor's safety or that of others." Id., ¶ 14. Here, minor Petitioners ask this Court to declare that their custody does not comply with the FSA's requirements and to enforce the Government's obligations under that agreement. See Pet. at 39–40, 42; see also Opp. at 26. In advocating for dismissal, Respondents maintain that only the U.S. District Court for the Central District of California — which supervised the entry of and continues to oversee compliance with the consent decree — has jurisdiction to entertain this claim. See MTD at 24–26; Reply at 11–14. The Court disagrees.

9

While the FSA guarantees that minors can seek its enforcement in the Central District of California, see FSA, ¶¶ 35, 37, it also holds open a narrow window for review by other federal courts. Specifically, it provides that minors "may seek judicial review in any United States District Court with jurisdiction and venue over the matter to challenge [a] placement determination or to allege noncompliance with the standards set forth in Exhibit 1." Id., ¶ 24.B. Exhibit 1, in turn, is entitled the "Minimum Standards for Licensed Programs," and it mandates, among other requirements, that detention facilities provide "suitable living conditions" as well as "[a]ppropriate routine medical and dental care . . . and emergency health care services." Id. at Ex. 1, ¶¶ A.1–2. Some of Petitioners' allegations here fall outside the scope of this review — e.g., noncompliance with release-determination and bond-hearing requirements provided for by the FSA outside the four corners of Exhibit 1. See Pet. at 39–40. But the consent decree itself allows for review of alleged violations of living conditions and medical-care standards (as addressed in Exhibit 1). The FSA thus permits the Court's involvement.

The parties' agreement, of course, cannot confer jurisdiction if it is otherwise lacking. Even if the Court were without federal-question jurisdiction to enforce the agreement as a stand-alone matter, compare Shaffer v. Veneman, 325 F.3d 370, 373 (D.C. Cir. 2003) (finding district court lacked subject-matter jurisdiction to enforce settlement agreement where United States was a party), with EOHC v. Sec'y United States Dep't of Homeland Sec., 950 F.3d 177, 193 (3d Cir. 2020) (finding federal-question jurisdiction to enforce FSA in Eastern District of Pennsylvania), it could exercise its supplemental jurisdiction to hear the claim. See 28 U.S.C. § 1367(a). Jurisdiction, then, provides no basis for dismissal of the Exhibit 1-based portions of the claim.

As the case proceeds, however, Petitioners should bear in mind that prudential concerns weigh against the Court's grant of FSA-based relief, as Judge Dolly M. Gee of the Central

District of California is actively overseeing the Government's compliance with the FSA and has already granted minor Petitioners the very relief they seek in this lawsuit. In June 2020, she ordered the release to a suitable sponsor of all juveniles who had been detained for longer than 20 days. Flores v. Barr, No. 85-4544, 2020 WL 3488040, at *3 (C.D. Cal. June 26, 2020), modified, 2020 WL 6804512 (C.D. Cal. Nov. 12, 2020). She also ordered ICE to "enforce its existing COVID-19 protocols," including those for social distancing, masking, and enhanced testing. Id. While this Court can likely offer no more, it will not dismiss the count at this juncture.

    D.  Writ of Mandamus

Petitioners next argue that they are entitled to a writ of mandamus ordering better conditions in the facilities or their release. See Pet. at 40–41. Mandamus relief is "drastic" and available "only in extraordinary situations." In re Cheney, 406 F.3d 723, 729 (D.C. Cir. 2005) (*en banc*) (citation omitted). To establish mandamus jurisdiction, Petitioners must demonstrate that: (1) they have "a clear right to relief," (2) Respondents have "a clear duty to act," and (3) they have "no other adequate remedy available," either judicial or administrative. Power v. Barnhart, 292 F.3d 781, 784 (D.C. Cir. 2002) (citations omitted); Ganem v. Heckler, 746 F.2d 844, 852 (D.C. Cir. 1984). These three requirements are jurisdictional, and even when met, "a court may grant relief only when it finds 'compelling . . . equitable grounds.'" In re Medicare Reimbursement Litigation, 414 F.3d 7, 10 (D.C. Cir. 2005) (quoting 13th Reg'l Corp. v. U.S. Dep't of Interior, 654 F.2d 758, 760 (D.C. Cir. 1980)). "The party seeking mandamus has the burden of showing that its right to issuance of the writ is clear and indisputable." Power, 292 F.3d at 784 (internal quotations and citation omitted).

Respondents posit that this claim should be dismissed for lack of subject-matter jurisdiction, see MTD at 26–28, and the Court agrees. First, to the extent that Petitioners seek release, the Court has previously explained why under the Fifth Amendment, they have no clear right to relief. O.M.G., 2020 WL 4201635, at *11–13. As to their request for the Government to "implement all protocols designed to prevent the transmission of COVID-19," Pet. at 42; Opp. at 27, the Court has already issued relief and thus Petitioners have an adequate remedy. See Min. Order (Mar. 30, 2020) (requiring, *inter alia*, provision of "CDC-compliant protocols and protections for congregate settings in civil-detention facilities"). As to the minors, Judge Gee's FSA-based order requiring release and better protocols demonstrates that they, too, have an adequate remedy that has been implemented. Flores, 2020 WL 3488040, at *3. Mandamus jurisdiction therefore does not lie.

E. Declaratory Judgment

Petitioners' final count is entitled "Declaratory Judgment Act." See Pet. at 41. They seek a declaration that Respondents "have no basis to refuse to implement adequate protocols to prevent the transmission of COVID-19" and ask this Court to order them "to immediately release [Petitioners] and all detainees to protect them from the dangers of COVID-19 transmission." Id. The Declaratory Judgment Act, 28 U.S.C. §§ 2201–02, permits federal courts to "declare the rights and other legal relations of any interested party seeking such declaration." Id. § 2201(a). The Act does not, however, provide an independent cause of action or a separate basis for jurisdiction; it only authorizes a form of relief. See Ali v. Rumsfeld, 649 F.3d 762, 778 (D.C. Cir. 2011); see also, e.g., Smirnov v. Clinton, 806 F. Supp. 2d 1, 11 (D.D.C. 2011) ("The Declaratory Judgment Act . . . is not 'an independent source of federal jurisdiction'[;] . . . [r]ather, the statute merely creates a remedy in cases otherwise within the Court's jurisdiction.")

(quoting C & E Servs., Inc. of Wash. v. D.C. Water & Sewer Auth., 310 F.3d 197, 201 (D.C. Cir. 2002)). To the extent that Petitioners assert a cause of action for a "declaratory judgment," then, it is dismissed. They may, however, continue to seek declaratory relief for the remaining causes of action that survive dismissal.

**IV.    Conclusion**

The Court, accordingly, will grant in part and deny in part Respondents' Motion to Dismiss. A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: December 10, 2020